# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **CHRISTY DAUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.: _____** |
| | ) | |
| **CITY OF COLUMBIA,** | ) | **JURY DEMAND** |
| **TENNESSEE, CHARLES** | ) | |
| **"CHAZ" MOLDER, TONY** | ) | |
| **MASSEY, and WANDA** | ) | |
| **McCLAIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

Comes now the Plaintiff, Christy Daus, by and through undersigned counsel, and states as follows:

## <u>INTRODUCTION</u>

1.     This is a civil rights action arising from a coordinated course of conduct by senior officials of the City of Columbia, Tennessee ("City") to retaliate against Plaintiff for exercising her rights under the First and Fourteenth Amendments and to chill her continued participation in matters of public concern in order to manipulate municipal procedures to ensure approval of a favored private development despite substantial public opposition and documented legal defects.

2.     Plaintiff is a longtime public servant and at all relevant times an employee of the City. In her private capacity as a citizen and resident, Plaintiff spoke at public meetings and submitted written correspondence as an adjacent landowner to the proposed "Waters Edge at Taylor Landing" development ("Waters Edge").

3.     Plaintiff's speech addressed matters of undeniable public importance, including zoning compliance, water and traffic capacity, infrastructure adequacy, and transparency in municipal decision-making.

4.     Rather than respond through neutral administrative processes, City officials responded with intimidation, threats of discipline, and adverse employment action designed to deter further speech.

5.     The retaliation did not occur in isolation. It arose in the context of a series of administrative irregularities and procedural deviations surrounding Ordinance No. 4563 related to the Waters Edge development, including revival of a failed ordinance, defective or last-minute agenda practices, unequal access to decision-makers, and inconsistent treatment of public notice.

6.     Senior City officials, including the Mayor, Council Members, and City Manager, coordinated with one another and with private developers outside of public meetings, selectively disclosed information, concealed records, and engineered a reconsideration process designed to produce a predetermined outcome.

7. At the same time, Defendants targeted Plaintiff in her capacity as a City employee, summoning her to an unprecedented disciplinary meeting, accusing her of "disgraceful conduct," and placing her under threat of further discipline.

8. These actions were undertaken with the purpose and effect of chilling Plaintiff's protected speech, discouraging further civic participation, and sending a warning to other City employees and residents who might consider speaking out.

9. Through these actions and/or omissions, Defendants deprived Plaintiff of her rights under the First and Fourteenth Amendments to the United States Constitution, and under Tennessee law.

10. This case seeks to restore those rights, to hold Defendants accountable for abusing their authority, and to ensure that municipal governance in Columbia, Tennessee is conducted transparently, lawfully, and without fear of retaliation.

## PARTIES, JURISDICTION, AND VENUE

11. This case arises under 42 U.S.C. § 1983 for deprivation of Plaintiff's rights secured by the First and Fourteenth Amendments to the United States Constitution, and under Tennessee law protecting public employee speech and political freedom.

12. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States and under 28 U.S.C. § 1343 to hear Plaintiff's claims to recover damages and to secure equitable relief.

13.     Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(1), as this is the judicial district where the Defendants are found. Venue is also appropriate under 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

14.     This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 in that they involve a common nucleus of operative facts with the federal claims and because the claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution.

15.     Plaintiff is an adult resident of Columbia, Maury County, Tennessee and has been employed as an Administrative Assistant in the City's Department of Public Works and Welfare since October 2024.

16.     Defendant City of Columbia, Tennessee ("City"), is a municipal entity located in Maury County and is a person for purposes of 42 U.S.C. § 1983.

17.     Defendant Charles "Chaz" Molder is the City's Mayor. He is sued in his individual capacity for damages and in his official capacity for declaratory and injunctive relief.

18.     Defendant Tony Massey is the City Manager of Columbia. He is sued in his individual capacity for damages and in his official capacity for declaratory and injunctive relief.

19.     Defendant Wanda McClain is the City's Human Resources Director. She is sued in her individual capacity for damages and in her official capacity for declaratory and injunctive relief.

20.     At all relevant times, the acts described herein were undertaken by City officials and employees acting under color of state law and pursuant to customs, policies, or practices attributable to the City.

## ADMINISTRATIVE AND PROCEDURAL CONTEXT

### A.     The Waters Edge Development

21.    The proposed Waters Edge development involves the construction of multi-family housing units and townhomes on property located near Taylor Bend Road in Columbia, Tennessee.

22.     The Development required/requires multiple approvals from the Planning Commission and City Council, including relevant to this matter – the approval of a Preliminary Planned Unit Development (PUD) Master Plan.

23.    The development implicates issues of water availability, traffic safety, zoning compliance, infrastructure capacity, and environmental impact.

24.    From early 2024 through early 2026, the development generated significant public concern and opposition. Numerous residents submitted petitions, letters, and public comments objecting to the development.

**B.     Failure of Ordinance No. 4563**

25.     On October 9, 2025, Ordinance No. 4563, which sought approval of the Preliminary PUD Master Plan for Waters Edge, failed on first consideration by a 2–2 vote with abstentions at the City Council's Regular Meeting. (October 9, 2025 Minutes, Item 10.5).

26.     City officials and staff acknowledged internally and to members of the public that the ordinance had failed and was no longer pending.

27.     For example, on October 24, 2025, Plaintiff, in her capacity as a private citizen, emailed Paul Keltner, the City's Director of Development Services, about removing the City's public notice signage because the Ordinance did not pass. On October 28, 2025, Mr. Keltner responded, "Yes, it's on our list to remove when we place the new ones out for current requests." This response is consistent with the understanding that the project had not passed, reinforcing the public's reasonable belief that the Ordinance had failed.

28.      And on November 5, 2025, the City emailed as follows regarding Ordinance 4563:

> "To approve an ordinance, the City Council would need to affirm it with a positive vote twice. **If an ordinance receives a negative vote, then no subsequent considerations follow**, regardless of whether it's the first hearing or the second." (emphasis added)

## C. Developer Influence on City's Revival of Ordinance

29.    On October 10, 2025 – the day following the failure of the Ordinance – the Developer emailed Mayor Molder requesting a meeting, and saying, "I know that in Roberts Rules, anyone from the prevailing side can recall the question for a future agenda. In this case, I believe that any member present to vote could call for reconsideration of the question given it was a 3 way tie." (Exhibit A).

30.    On October 16, 2025, Council Member Secrest requested to meet with the developer directly. While a meeting was initially scheduled, Mr. Keltner and Mr. Massey told the Developer they would like to meet with Council Member Secrest alone. Council Member Secret responded to this information from the Developer by saying, "Yes, they told me. I really hate you guys won't be there but I understand their reasoning." (*Id.*).

31.    On October 21, 2025, the City Manager asked the developer for a rough estimate of the project cost for Waters Edge, which the Developer stated was around $25 million.

32.    Following that communication, between October 21-29, 2025, Mr. Keltner appears to have met with the Waters Edge developer and certain Council Members on multiple occasions, including Council Members McCullen (who originally abstained) and Secrest (who originally voted no on the Ordinance). (Exhibit A).

7

33. On November 10, 2025, the Waters Edge property owner emailed Mr. Keltner stating as follows:

"I'm asking you to do what you can for the City to approve the current Waters Edge Plan. The Taylor Bend community is yet again up in arms about the Project… The City will benefit from the new Waters Edge." (Exhibit B).

34. In response, just 15 minutes later, Mr. Keltner forwarded an email to the developer. The forwarded email was the City Manager's communication to the City Council from that same day, which said:

"An item not approved at a City Council meeting may be reconsidered. To do so one of the no votes, abstentions, or a member absent must request it to be re-considered. Councilmembers McCullum and Secrest are making this request. It will be on this Thursday's agenda under other business. The vote is only to consider placing it on the December City Council meeting. If a majority agrees to do so it will then be on the next month's agenda for re-consideration." (*Id.*).

## D. Improper Revival and Irregular Procedure

35. Despite the Ordinance's failure, the City subsequently returned the Waters Edge item to the agenda without filing a new ordinance, without returning the matter to the Planning Commission, and without initiating the statutory procedures required for renewed consideration. (November 13, 2025 Minutes, Item 11.2).

36. The City characterized the action as a "reconsideration" rather than a new ordinance, even though reconsideration of a failed ordinance was not authorized under the City's legislative procedures.[1] Likewise, Motions to Reconsider may be

---

[1] Section 8.5.18(K) of the City's Zoning Ordinance did not, and does not, authorize reconsideration of Ordinance No. 4563 by the City Council after its failure on October 9th. The ordinance heading

made only on the day the vote to be reconsidered was taken or, in this case, October 9th under *Robert's Rules of Order*.

## E. Subsequent Consideration and Passing of Ordinance

37. At the November 13, 2025 Regular Meeting of the City Council, Council Member Secrest and Council Member McCullen moved to bring Waters Edge back for reconsideration.

38. A first consideration of Ordinance No. 4563 occurred for the second time at the December 11, 2025 Regular Meeting of the City Council, where it passed by a 5-1-1 vote. (December 11, 2025 Minutes, Item 10.6).

39. During this meeting, Council Member Secrest admitted she met with both the City Manager and Development Services Director between the failure and revival of the Ordinance. She further stated to the public, "If it's not your property, there's nothing you can do about it" – a complete reversal from her opinion at the October 9th meeting where she expressed concern over the development, saying there is "so much more" that could be done with the property, such as using it as a park, before ultimately voting no.

---

and text make clear that the subsection governs the *effect of denial of an **application*** and the circumstances under which a *new or amended **application*** (not ordinance) may be reconsidered. Section 8.5.18(K) does not create a procedure for the City Council to revive a failed **ordinance** or circumvent mandated procedures, such as referral to the Planning Commission and statutory public notice requirements.

40.     A second consideration of Ordinance No. 4563 occurred at the January 8, 2026 Regular Meeting of the City Council where it passed by a 5-1-1 vote. (January 8, 2026 Minutes, Item 10.1).

## FACTUAL ALLEGATIONS

**A.     Plaintiff's Employment and Speech**

41.      Plaintiff began her employment with the City in or about October 2024 as an Administrative Assistant in the Department of Public Works and Welfare.

42.     Plaintiff had never been disciplined, reprimanded, issued a write-up, or received any complaint about her work performance prior to her opposing the Waters Edge development.

43.     Plaintiff's job duties do not include land-use approvals, zoning / development administration, or the like.

44.     Plaintiff owns property and resides adjacent to the proposed Waters Edge development.

45.     In 2025, Ordinance No. 4563 (and related applications) concerning Waters Edge became the subject of significant public debate, including concerns about infrastructure capacity, water availability, traffic, and compliance with governing zoning procedures.

46.    In her private capacity as a citizen and adjacent landowner, Plaintiff submitted written correspondence and spoke at public meetings regarding Waters Edge. (Exhibit C).

47.    Plaintiff's speech addressed public policy, municipal governance, and infrastructure concerns – matters of public concern protected by the First Amendment.

48.    Plaintiff's statements at public meetings were consistent with numerous letters, petitions, and public comments submitted by other residents expressing opposition or concerns regarding Waters Edge.

49.    On November 13, 2025, Plaintiff addressed the City Council via written correspondence as a private citizen regarding Waters Edge, focusing on public notice, procedural irregularity, and the integrity of City decision-making.

50.    Also on November 13, 2025, Plaintiff addressed the City Council during the public comment period of the meeting. Plaintiff's remarks included concerns about compliance with the Tennessee Open Meetings Act and the late modification to the agenda,[2] and she referenced City communications describing how ordinances are approved. (Exhibit D, Transcript of Plaintiff's Remarks).

---

[2] Waters Edge was posted as an agenda item on November 12th at 3:54 pm – around 24 hours before the November 13th meeting.

51.     Plaintiff also attempted to communicate with City officials by email about Waters Edge. At relevant times, Plaintiff's comments were not placed on the agenda(s). The City claimed Plaintiff's personal email account (Gmail) was purportedly rejected or blocked by the City's email system. (See, e.g., Recording of September 10, 2025 Planning Commission Meeting, beginning at 15:00, City official claims "We do not accept Gmail accounts – it's unfortunately blocked."). Notably, upon information and belief, no other Gmail users had issues communicating with the City via email.

**B.     HR Meeting Citing "Disgraceful Personal Conduct"**

52.     On or about December 1, 2025, at approximately 2:30 p.m., Plaintiff was summoned to a meeting with the City's Human Resources Director, Wanda McClain, and Plaintiff's supervisor, the Director of Public Works and Welfare.

53.     At that meeting, Ms. McClain confronted Plaintiff about her Waters Edge public comments and asserted she had violated the City's personnel policies. Plaintiff was told the issue was what she said at a City Council meeting (while off-duty and speaking as a private citizen).

54.     The City produced printed pages from the City's Personnel Policies and Procedures relating to discipline and dismissal, highlighting language identifying "disgraceful personal conduct or language toward the public, the City Council, the

Civil Service Board, other officials of the City or fellow employees" as a basis for adverse action. (Exhibit E).

55.     Plaintiff denied making any improper statements.

56.     City officials nonetheless treated Plaintiff's protected speech as a disciplinary infraction, signaling that future participation in public meetings could jeopardize her employment and personnel record.

57.     City officials further stated, in substance, that they had received calls from senior officials, including the Mayor and City Manager, regarding Plaintiff's public comments made at the City Council Meeting.

58.     The City did not provide Plaintiff with a pre-deprivation hearing, neutral factfinding, or an appeal process in connection with the counseling/reprimand relating to her off-duty public speech. Instead, City officials used the meeting as an intimidation event to deter future speech.

**C.     Subsequent Chilling Effects**

59.     After the meeting, Plaintiff experienced chilling effects and adverse treatment, including exclusion from meetings, diminished workplace interactions, and denial or reduction in training opportunities. Plaintiff perceived a marked change in workplace demeanor and opportunities following her public opposition to Waters Edge.

60. On December 9 and 10, 2025, the City Manager forwarded her private citizen correspondences to her Supervisor and the Director of Human Resources, Ms. McClain. These correspondences involved zoning/development matters and, as such, had no relation to Human Resources' matters. (Exhibit F).

61. On December 10, 2025, at a holiday luncheon for City employees, Plaintiff observed senior officials – identified as Vice Mayor McBroom, City Manager Massey, and Assistant City Manager Jablonski – sit immediately adjacent to and across from her in a manner Plaintiff perceived as a show of strength and intimidation in the wake of the reprimand.

62. On information and belief, the City's notice practices for Waters Edge were inconsistent and selectively administered, including through deviations from ordinary mail procedures and selective dissemination of agendas and information to favored participants.

63. One comparator illustrates the City's treatment of dissenters versus perceived supporters. Bonnie Froehlich, a City employee and Taylor Landing homeowner/adjacent property owner, who initially opposed Waters Edge (including by signing a petition that was produced to the City) but was described internally by a senior City official as being "in favor" of the project. (Exhibit G).

64. Bonnie Froehlich eventually withdrew from the Taylor Landing neighborhood "transition team," explaining that she was a City employee and

worked alongside people with fiduciary obligations. (*Id*.). Plaintiff alleges this incident reflects a climate where City employees perceived retaliation risk or pressure regarding public participation in Waters Edge advocacy.

65.   Ms. Froehlich – a formerly close coworker of Plaintiff – as well as other coworkers, are now distant.

66.   Upon information and belief, Plaintiff's supervisor informed Plaintiff's coworkers that she had been called to Human Resources for misconduct. Plaintiff alleges this reflects further attempts at retaliation and embarrassment by the City.

67.   Further, after speaking at the City Council Meeting Plaintiff was denied the option to attend an out-of-office training opportunity.

**D.     Connection to Administrative Irregularities**

68.    The HR meeting and other adverse actions occurred contemporaneously with the City's internal acknowledgment that Ordinance No. 4563 had failed and during the period when City officials were coordinating its return to the agenda.

69.    The close temporal relationship between Plaintiff's speech, the procedural manipulation of the ordinance, and the adverse employment actions supports a causal connection between protected speech and retaliation.

70.    The temporal proximity between Plaintiff's speech and the City's deviation from ordinary procedures further supports an inference that the City's

actions were motivated by a desire to control or suppress dissent rather than to apply neutral legislative standards.

71.     The Defendants' conduct would deter a person of ordinary firmness from continuing to speak at City meetings on Waters Edge and related matters. Plaintiff has been chilled in her participation and has expended time and resources to protect her employment, reputation, and property interests.

## CAUSES OF ACTION

### Count I: First Amendment Retaliation (42 U.S.C. § 1983)
**(All Defendants, Individual Capacities; City of Columbia)**

72.     Plaintiff realleges and incorporates by reference paragraphs 1 through 71 as if fully set forth herein.

73.     Plaintiff engaged in activity protected by the First Amendment by speaking at City Council meetings and submitting correspondence as a private citizen on matters of public concern, including municipal governance, transparency, and infrastructure impacts of Waters Edge.

74.     Plaintiff's statements were made in her capacity as a private citizen and not pursuant to her official duties as a City employee; Defendants understood Plaintiff was speaking as a citizen and adjacent property owner.

75.     Defendants took materially adverse actions against Plaintiff, including summoning her to Human Resources for counseling/reprimand premised on her

public comments, threatening discipline, and creating a workplace climate that chilled her continued speech.

76.     Defendants' adverse actions were substantially motivated by Plaintiff's protected speech, as shown by (a) direct references to her comments made at the City Council Meeting during counseling; (b) reliance on policy language targeting speech "toward the public" and "City Council"; (c) temporal proximity to her Waters Edge public comments; and (d) internal coordination among senior officials regarding Waters Edge and dissenting speakers.

77.     Defendants lacked an adequate governmental justification to discipline or threaten Plaintiff for truthful, non-disruptive, off-duty speech on matters of public concern, and any asserted justification was pretextual.

78.     Defendants' conduct violated clearly established law. It has long been clearly established that the government may not retaliate against a public employee for speaking as a citizen on matters of public concern absent a showing that the speech so disrupted governmental operations as to outweigh the employee's and public's interest. *See, e.g., Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983); *Lane v. Franks*, 573 U.S. 228 (2014).

79.     As a direct and proximate result, Plaintiff suffered damages including emotional distress, reputational harm, and economic harm (including risk to

continued employment and advancement), and is entitled to relief under 42 U.S.C. § 1983 and attorneys' fees under 42 U.S.C. § 1988.

80.     The actions undertaken by Defendants were committed under color of state law.

81.     The actions of Defendants, which collectively occurred multiple times in multiple contexts, amounted to the City's custom, policy, and procedure for depriving Plaintiff of her rights, freedoms, and immunities guaranteed by the First Amendment to the United States Constitution.

82.     Defendants – individually and in conspiracy with each other – acted willfully, intentionally, and maliciously to retaliate against Plaintiff for engaging in protected speech.

### Count II: First Amendment Prior Restraint / Viewpoint Discrimination (42 U.S.C. § 1983) (All Defendants, Individual Capacities; City of Columbia)

83.     Plaintiff realleges and incorporates by reference paragraphs 1 through 82 as if fully set forth herein.

84.     Defendants' threats and counseling premised on Plaintiff's speech at City meetings coupled with selective interference with Plaintiff's communications to officials (including rejection/blocking of Plaintiff's email messages) and deviation from customary notice practices operated as an unlawful prior restraint and viewpoint-based suppression of Plaintiff's petitioning and public-meeting speech.

85. Defendants' actions were not content-neutral time/place/manner regulation; they targeted Plaintiff's viewpoint and criticism of the City's handling of Waters Edge and municipal procedures.

86. Defendants' conduct violated clearly established First Amendment principles prohibiting prior restraints and viewpoint discrimination in public fora and the right to petition government for redress of grievances. *See, e.g., Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983); *Hartman v. Moore*, 547 U.S. 250 (2006) (retaliation principles); *Nieves v. Bartlett*, 587 U.S. 391 (2019) (retaliation).

87. Plaintiff is entitled to declaratory and injunctive relief to prevent ongoing and future enforcement of speech-restrictive policies against her and to prohibit interference with her communications to City officials, and/or participation in public meetings regarding Waters Edge and other matters of public concern.

### Count III: Procedural Due Process (Fourteenth Amendment)
### 42 U.S.C. § 1983
**(All Defendants; City of Columbia)**

88. Plaintiff realleges and incorporates by reference paragraphs 1 through 87 as if fully set forth herein.

89. Tennessee law and City ordinances create procedural entitlements to notice and an opportunity to be heard for adjacent property owners in land-use proceedings

and create procedural protections for City employees facing discipline. Plaintiff had legitimate claims of entitlement to these procedures.

90. Defendants deprived Plaintiff of those procedural protections by, among other things: (a) employing defective or inconsistent notice practices concerning Waters Edge despite Plaintiff's adjacent-owner status; (b) selectively interfering with Plaintiff's ability to communicate with decision-makers; and (c) imposing counseling/reprimand premised on protected speech without meaningful notice, neutral decision-making, or an opportunity to contest the allegations in a fair process.

91. Defendants' procedures were arbitrary and fundamentally unfair, and the available post-deprivation remedies were inadequate to prevent the chilling effect and ongoing harm to Plaintiff's employment and civic participation.

92. Plaintiff is entitled to declaratory and injunctive relief, and to damages, for deprivation of due process under the Fourteenth Amendment. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

## Count IV: Equal Protection (Fourteenth Amendment) (42 U.S.C. § 1983) (City of Columbia; Individual Defendants)

93. Plaintiff realleges and incorporates by reference paragraphs 1 through 92 as if fully set forth herein.

94. Defendants treated Plaintiff differently from similarly situated residents and City employees based on her protected viewpoint and criticism of Waters Edge, including by subjecting Plaintiff to counseling for public comments while treating

perceived supporters more favorably and by selectively facilitating access and notice for favored participants.

95.    This differential treatment lacked a rational basis and was motivated by animus toward Plaintiff's protected activity, violating the Equal Protection Clause.

## Count V: Municipal Liability (*Monell*) (42 U.S.C. § 1983)
### (City of Columbia)

96.    Plaintiff realleges and incorporates by reference paragraphs 1 through 95 as if fully set forth herein.

97.    The City is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because Plaintiff's injuries were caused by one or more of the following: (a) official decisions and ratification by final policymakers (including the Mayor, City Council, City Manager, and/or Director of Public Works); (b) a custom or practice of suppressing dissent regarding favored private developments through agenda manipulation, selective access, and intimidation of City-employee residents; and/or (c) inadequate training and supervision of officials regarding employees' First Amendment rights and lawful public-notice procedures.

98.    The City's Personnel Policies and Procedures were invoked and applied in a manner that reasonably communicated an official policy of deterring speech "towards the public" and "City Council" when such speech criticizes City actions, and the City's senior officials ratified that application.

## Count VI: Public Employee Political Freedom Act (PEPFA)
### (City of Columbia)

99.     Plaintiff realleges and incorporates by reference paragraphs 1 through 98 as if fully set forth herein.

100.    Per Tenn. Code Ann. § 8-50-63, "[i]t is unlawful for any public employer to discipline, threaten to discipline or otherwise discriminate against an employee because such employee exercised that employee's right to communicate with an elected public official."

101.    Plaintiff communicated with elected officials, including Mayor Molder and the entire City Council, about her concerns regarding the Waters Edge development as an adjacent property owner.

102.    As a direct and exclusive consequence of those communications, Defendant threatened Plaintiff's employment and subjected her to retaliation.

103.    The sole or substantial motivating reason for (i) the City's discipline of Plaintiff, (ii) intimidation, and (iii) hostility was her exercise of her right to communicate her concerns to elected officials.

104.    Plaintiff was chilled in communicating with elected and other public officials under threat of discipline.

105.    Defendant disciplined, threatened to discipline, or otherwise discriminated against Plaintiff because of, in anticipation of, or to deter her from exercising her right to communicate with elected public officials.

106. Defendant's conduct caused embarrassment, humiliation, fear of discipline, and economic damages.

## DAMAGES AND RELIEF

107. As the direct, proximate, and exclusive cause of Defendants' illegal conduct, Plaintiff has suffered and will continue to suffer damages including emotional distress, humiliation, loss of reputation, interference with career advancement, and out-of-pocket costs.

108. Plaintiff has also suffered irreparable harm in the form of chilled speech and impaired participation in governmental proceedings – injuries that are not fully compensable by monetary damages alone.

109. Plaintiff seeks a declaration that Defendants' conduct violated the First and Fourteenth Amendments.

110. Plaintiff seeks permanent injunctive relief prohibiting Defendants from retaliating against Plaintiff for protected speech, enforcing speech-restrictive policies against off-duty civic participation, and interfering with Plaintiff's communications to City officials concerning matters of public concern.

111. Plaintiff further seeks injunctive relief requiring the City to implement constitutionally compliant procedures for (a) employee discipline premised on off-duty speech and (b) public notice/communication access for adjacent property owners in Waters Edge proceedings, as necessary to prevent ongoing harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

112.    A declaratory judgment that Defendant violated Plaintiff's rights under the First and Fourteenth Amendments, as well as State law;

113.    A jury to be empaneled to serve as the trier of fact;

114.    Permanent injunctive relief as requested;

115.    Compensatory damages in an amount to be proven at trial;

116.    Punitive damages against the individual Defendants to the extent permitted by law;

117.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

118.    Pre-judgment and post-judgment interest as allowed by law; and

119.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Dustin J. Kittle
Dustin J. Kittle, BPR No. 032660
Humble Law, LLC
2310 Santa Fe Pike
Columbia, Tennessee 38401
(256) 996-5822
dustin@humble.law

/s/ Ashley M. Posey
Ashley M. Posey, BPR No. 037411
Humble Law, LLC
2310 Santa Fe Pike

Columbia, Tennessee 38401
(757) 570-5014
ashley@humble.law

*Counsel for Plaintiff*

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**

City of Columbia, Tennessee
700 North Garden Street
Columbia, Tennessee 38401

Charles "Chaz" Molder, Mayor
700 North Garden Street
Columbia, Tennessee 38401

Tony Massey, City Manager
700 North Garden Street
Columbia, Tennessee 38401

Wanda McClain, Director of Human Resources
700 North Garden Street
Columbia, Tennessee 38401